IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALTER MAY, II, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 04-143E |
| | )  JUDGE SEAN MCLAUGHLIN |
| LOUIS FOLINO, | ) MAGISTRATE JUDGE BAXTER |
| | ) |
| Respondent. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

**II.    REPORT**

Walter May, II, is a state prisoner incarcerated at the State Correctional Institution at Camp Hill, Pennsylvania. May pled guilty on February 8, 1999, to one count of Murder in the Second Degree, one count of Aggravated Assault, and two counts of Robbery. He was sentenced that same date to a mandatory term of life imprisonment for the murder conviction and an additional 15 ½ to 31 years imprisonment for the remaining charges. Presently before the court is May's petition for writ of habeas corpus.

   **1.   Procedural History.**

May appeared before the state court on February 8, 1999, and tendered a negotiated plea of guilty pursuant to a written plea agreement with the Commonwealth (Guilty Plea Transcript of February 8, 1999 at 2). In return for dropping additional charges, May agreed to plead guilty to one count each of Second Degree Murder and Aggravated Assault, and two counts of Robbery. The court

conducted a lengthy plea colloquy during which the elements of each charge were explained in detail (Id., 7-12). May conceded being involved, along with two co-defendants, in the robbery of Michelle Elkins in her home in Oil City, Pennsylvania, and further admitted that he was armed with a loaded revolver during the offense (Id.). May next indicated that he was also involved in a robbery at the Matkovich residence in Oil Creek Township and that he twice fired a weapon during the episode which resulted in Mr. Matkovich's death, and the wounding of Mrs. Matkovich (Id., 12-21). The Judge determined that a sufficient factual basis existed for each crime to which May was pleading guilty, and he explained his findings to May in detail (Id., 21-31).

The court then enumerated the maximum penalties for each crime charged, including the mandatory nature of the life sentence for Second Degree Murder (Id., 31-34). May denied that any promises of leniency or early parole had been made to him in exchange for his plea (Id., 35-36). May's right to a jury trial and his appellate rights were also delineated (Id., 36-39). The court then inquired concerning counsel's assistance, and May indicated that he had met with counsel, and that he was convinced that a guilty plea was in his best interests (Id., 40). The court accepted the guilty plea and proceeded to sentencing (Id., 41).

May filed a petition to withdraw his plea on February 18, 1999, asserting that the murder victim had, in fact, died of a heart attack and not a gunshot wound (Petition to Withdraw Guilty Plea Transcript of February 19, 1999 at 2). The Commonwealth presented evidence from an autopsy which established that the victim died from complications arising from a gunshot wound to his neck (Id., 4). May also requested a modification of his sentence to permit the additional sentences to run concurrently with his life sentence (Id., 5). Counsel argued that May's "expectations" when pleading guilty were that the court would sentence him in the same or similar fashion as May's co-defendant, who received life imprisonment and concurrent sentences of 4 to 10 years (Id., 5-6). The court interpreted this as a challenge to the voluntariness of the plea on the basis of disappointed expectations regarding sentence, and denied the motion because the court explained the possible sentences during the plea, and May denied that any promises regarding his sentence had been made to induce his plea (Id., 10-11).

May did not file a direct appeal, but instead filed a petition pursuant to the Post

Case 1:04-cv-00143-SJM-SPB    Document 12    Filed 11/30/2005    Page 3 of 15

Conviction Relief Act (PCRA) on June 28, 1999, alleging that counsel failed to act on May's request for a direct appeal, and that his plea was not voluntary. The court held a hearing on the July 21, 2000 at which May, his father and May's trial counsel testified. May's father testified that trial counsel told his son "that if he plead guilty, in fifteen years he could petition the Governor for a commutation of sentence." (Transcript of July 21, 2000 at 9). May's father repeatedly advised May not to plead guilty (Id., 10-11).

May testified that he asked counsel to file a direct appeal on his behalf (Id., 24). He also testified that counsel "didn't bother preparing" for trial since "[h]e figured [petitioner] would plead guilty." (Id., 25). Counsel is said to have told May that he could obtain a commutation after 15 years, and that his sentences would be concurrent (Id., 26-27, 29). On cross-examination, May was unable to identify any defense he had to the charges. Indeed, he confessed his involvement in the two robberies to police, and also confessed to having fired the shots during the second robbery (Id., 31-32). May recalled that his counsel considered an insanity defense, but the report from the court-appointed expert, Dr. Wettstein, "wasn't favorable." (Id., 37). Counsel informed May that he did not have an insanity defense, and it was at this point that May decided to plead guilty (Id.). May also admitted that he understood at the time of the plea that his sentence for murder would be "natural life" (Id., 41-42), and he acknowledged that he denied under oath during the guilty plea that any promises had been made to induce his plea (Id., 42).

May's trial counsel, Shawn White, Esquire, then testified. White recalled, and had notes regarding, his first meeting with petitioner on March 19, 1998, at which point May admitted his involvement much as he had to the police (Id., 59). White met with May once more prior to the preliminary hearing, again on the day of the preliminary hearing, and 8-12 more times prior to the time May entered his guilty plea (Id., 60). White explained that the only defense he could conceive of was an insanity defense, but that the court-appointed expert, Dr. Wettstein, issued a report which prevented such a defense (Id., 61). White denied promising May concurrent sentences (Id., 64). He did recall telling May that a life sentence in Pennsylvania was without possibility of parole, and White specifically denied promising May a commutation after 15 years (Id., 66, 74). White testified that May wanted to plead guilty, that he refused to testify in his own defense, and that he was concerned with

obtaining a contact visit with his family, which the trial court arranged outside of the plea process (Id., at 89). White did, however, concede that May wanted a direct appeal, but White saw no basis for it (Id., 73).

The trial court reinstated May's right to file a direct appeal in an order dated July 24, 2000. The court also made the following relevant findings of fact in conjunction with that order:

> . . . We do find that counsel was asked to take an appeal within the thirty-day period, and, without justification, did not do so.
>
> \* \* \*
>
> With regard to the issue raised by the Defendant on whether or not the plea was knowingly, voluntarily, and intelligently entered, the Court again finds the plea was knowingly, intelligently and voluntarily entered. The Defendant is criminal court savvy. He has been through the system before this case. On the record available from the guilty plea hearing on February 8, 1999, the Defendant was fully informed of his rights and knowingly, intelligently, and voluntarily entered the plea. We made that finding on that date and there is no evidence presented today which in any way impeaches our finding of February 8, 1999. On the contrary, Attorney White's testimony, which we find to be credible, was that all of the Defendant's options were thoroughly explained to the Defendant, both before the plea and after.
>
> With regard to the Defendant's contention that there is no way that the Defendant benefitted from entering a guilty plea, we are not going to venture into speculation as to whether or not the Defendant would or would not have benefitted from a trial as opposed to pleading guilty. The point is, the Defendant had the option of having a trial, that right was explained to him on numerous occasions, and he chose to waive his right to have a trial, clearly, on this record. He then entered a plea of guilty and the Court sentenced him in conformance with the plea agreement. The claim that the plea was involuntarily made and not knowingly or intelligently made is totally devoid of merit.

(Findings of Fact, July 21, 2000).

On direct appeal to the Superior Court, May raised the single claim that the plea was defective due to counsel's promise that May would be eligible for a pardon or commutation after 15 years (Superior Court Opinion of October 15, 2001 at 2). The Superior Court addressed the merits of this claim and affirmed the finding that the plea colloquy evidenced a knowing, voluntary and intelligent plea, and further adopted the trial court's factual finding that no promise of commutation was made to induce the plea (Id., 3-4). May did not seek review of the Superior Court's order.

On April 26, 2002, May filed a PCRA petition asserting that appellate counsel failed to file a Petition for Allowance of Appeal in the Supreme Court of Pennsylvania after Superior Court's

October, 2001 Opinion. The trial court agreed, and entered an order reinstating his right to file such a petition on April 29, 2002 (Order of Court dated April 29, 2002). A Petition for Allowance of Appeal was filed on May's behalf in the Supreme Court of Pennsylvania on May 28, 2002, and was denied by that court on August 13, 2002.

May filed a second PCRA petition on September 23, 2002, raising numerous claims of ineffective assistance of trial and appellate counsel. A hearing on the petition was ultimately held on April 8, 2004. New counsel explained May's claims as being a renewed challenge to the voluntariness of the plea, and claims of ineffective assistance of prior PCRA counsel for failing to develop issues at the prior hearing (Transcript of April 8, 2004 at 5). Petitioner testified that trial counsel told him he "should get life plus four to ten" which was the same sentence his co-defendant received (Id., 20). May also testified that prior PCRA counsel moved for a continuance prior to the July 21, 2000 hearing on May's first PCRA petition, and asserted that counsel was not prepared to proceed (Id., 25). May believes that he did not commit one of robberies to which he pled guilty because nothing was ultimately taken from the Matkovich residence (Id., 26). He conceded on cross-examination, however, that he and his co-defendants went to the house with intent to commit a robbery, and that he ended up shooting the couple who owned the house, killing the husband and wounding the wife (Id., 34)[1].

The trial court denied the PCRA petition on May 3, 2004, and addressed May's claims seriatim. The court summarily rejected claims of an illegal or unconstitutional sentence, finding that no argument or evidence was offered in support of these claims (Opinion of May 3, 2004 at 4). The court further found that the alleged ineffectiveness of initial PCRA counsel was moot since counsel obtained the relief sought, i.e., the reinstatement of May's right to file a direct appeal.

May also asserted that guilty plea counsel was ineffective for several reasons, including a claim that counsel promised May that his sentence would be no more than life plus four to ten years.

---

[1] The trial court ultimately concluded that this was sufficient to establish the crime of robbery under Pennsylvania law.

The court, relying upon the record made during the initial PCRA proceeding, found that no promises had been made to induce the plea, and rejected each of May's claims.  The court also noted that the voluntariness of the plea had already been litigated, and, in any event, the court again opined that the plea was knowing, intelligent and voluntary (Id., 7).  Petitioner did not file an appeal from the denial of PCRA relief.

Petitioner now files the instant petition for writ of habeas corpus in which he raises the following claims:

1. Trial counsel promised a sentence of life plus 4 to 10 years to induce the guilty plea:

2. Trial counsel did not prepare for trial;

3. Trial counsel was offended by requests made by May which counsel believed made him an "errand boy;"

4. Breach of contract for failure to dismiss all remaining charges;

5. Illegal sentence for imposition of fines which May cannot pay; and

6. PCRA counsel was ineffective for failing to appeal the denial of relief with respect to May's third PCRA.

(Docket #3 at ¶13).  The Commonwealth has responded to the petition (Docket #7) and it is ripe for disposition.

### 2. Exhaustion.

Petitioner's first and second claims were presented to the state courts during direct appeal and state court remedies have been exhausted with respect to these claims.  The remaining claims raised by May have not, however, been presented to the state courts.  This does not necessarily mean that May's claims are barred by a failure to exhaust state court remedies.  "If a claim has not been fairly presented to the state courts but state law clearly forecloses review, see Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir.1998), 28 U.S.C. § 2254(b)(1)(B) (1988) (amended 1996), exhaustion is excused, see, e.g., Doctor v. Walters, 96 F.3d 675, 681 (3d Cir.1996), but the doctrine of procedural default may come into play."  Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).  Here, the only means by which May could raise additional claims would be through yet another PCRA petition, and

the time for filing such a petition has long since expired. Thus, even though May has failed to comply with the exhaustion requirement in this case, exhaustion may be excused in this case due to the lack of any further means by which he may obtain state court review of his unexhausted claims.[2]

---

[2]   The only exception to this analysis is plaintiff's final claim, that counsel rendered ineffective assistance in failing to file an appeal from the denial of PCRA relief. Rather than engage in an analysis of the procedural propriety of this claim, the court will merely note that it does not rise to constitutional magnitude even if it is properly before the court. "There is no constitutional right to an attorney in state post-conviction proceedings. Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (applying the rule to capital cases). Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. See Wainwright v. Torna, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective assistance)." Coleman v. Thompson, 501 U.S. 722, 752 (1991). It follows that counsel's asserted failure to file an appeal from the denial of relief in such a proceeding would not give rise to a constitutional claim. See also, Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988)(asserted errors in the course of a state's post conviction process not cognizable in a federal habeas petition); Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir.1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotation marks omitted); Roe v. Baker, 316 F.3d 557, 571 (6th Cir. 2002) ("relief may not
(continued...)

### 3. Procedural Default.

Like the exhaustion requirement, the procedural default doctrine is based upon notions of comity and federalism. The procedural default barrier rests upon the "independent and adequate state grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

A state's procedural rules are entitled to deference by federal courts, and violation of a state procedural rule may constitute an independent and adequate state ground for denial of federal review of habeas claims. Coleman v. Thompson, 501 U.S. at 750. Violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), cert. denied, 116 S.Ct. 1027 (1996).

---

[2](...continued)
be granted to a habeas petitioner for alleged deficiencies in a state's post-conviction procedure"); Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir. 1994); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989); Hopkinson v. Shillinger, 866 F.2d 1185, 1219-20 (10th Cir. 1989), on reh'g, 888 F.2d 1286 (1989), overruling on other grounds recognized by Davis v. Maynard, 911 F.2d 415, 417 (10th Cir.1990); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir.1987). Contra Dickerson v. Walsh, 750 F.2d 150, 153 (1st Cir.1984); Lambert v. Blackwell, 2003 WL1718511 (E.D.Pa., April 1, 2003)(persuaded by Eighth Circuit's analysis that such claims impact only the issue of exhaustion of state remedies); Abu-Jamal v. Horn, 2001WL1609690 (E.D.Pa., Dec. 18, 2001)(same). Thus, this claim will not be further addressed.

Federal habeas review is not available to a petitioner whose constitutional claims have not been addressed on the merits due to procedural default unless such petitioner can demonstrate: 1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. at 750. The cause standard is satisfied when a petitioner demonstrates that some objective factor external to the defense impeded his efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986).

May's third, fourth and fifth claims were waived under state law when May failed to raise them during direct appeal, and were again waived when he failed to present them during his PCRA proceeding. Commonwealth v. Bond, 819 A.2d 33, 39 (Pa. 2002)("Even if this Court were to assume that these two claims of trial error were not previously litigated, they would be waived under the PCRA since appellant's present theories could have been presented on direct appeal."); 42 Pa.C.S. §9544(b)(issue is waived if petitioner failed to raise it and the issue could have been raised before trial, at trial, on appeal, in habeas corpus proceeding, or in prior proceeding under PCRA).

May's third, fourth and fifth claims are subject to at least one state court procedural default which bars review in this court absent petitioner satisfying the "cause and prejudice" standard. To satisfy the cause standard, May must demonstrate that some objective factor external to the defense impeded his efforts to raise the claim in state court. McCleskey, supra 499 U.S. at 493; Murray, supra, 477 U.S. at 488. May does not assert any cause for failure to raise these claims. Accordingly, the Court need not consider the question of actual prejudice. See Murray, 477 U.S. at 533 (court need not consider prejudice if no cause is shown).

Although May cannot demonstrate the necessary "cause," for the procedural default of his third, fourth and fifth claims, this court may still review those claims if May can show that a "fundamental miscarriage of justice would result from a failure to entertain the claim." McCleskey, 499 U.S. at 495. The court may, in its discretion, correct a fundamental miscarriage of justice if it appears that a "constitutional violation probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. See also Coleman, 501 U.S. at 748; McCleskey, 499 U.S. at 502.

Under the "miscarriage of justice" standard, a petitioner must present new evidence of innocence and persuade the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. Schlup v. Delo, 513 U.S. 298, 327 (1995). This is a stronger showing than is required to establish prejudice and is found only in a truly "extraordinary" case. Id., 513 U.S. at 321. To succeed on an actual innocence claim, a petitioner must invoke "reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), and "show that it is more likely than not that no reasonable juror would have convicted him in light of new evidence presented in his habeas petition." Schlup, 513 U.S. at 327.

May's third claim, regarding his trial counsel's apparent upset at being treated as an "errand boy" (May is, apparently, referring to attorney White's testimony during the initial PCRA hearing after which May obtained reinstatement of his appellate rights), seems to be a claim that counsel somehow failed to properly advise May prior to the plea, or that he somehow did not fulfill his duties in a professional manner. In this respect, May does not deny his guilt, but apparently seeks to overturn his guilty plea. Therefore, he has failed to present evidence of a miscarriage of justice since he has failed to present any evidence of innocence of the crimes charged.

The same analysis may be applied to May's fourth claim, which is that the Commonwealth failed to dismiss all of the remaining charges. And, in any event, the docket in this case reveals that charges were, in fact, dismissed immediately following May's guilty plea. Thus, this claim is meritless.

Finally, May's claim that he was improperly sentenced to restitution does not meet the manifest injustice standard since, again, it has nothing to do with actual innocence of the crimes charged. Thus, the only claims in the instant petition which are not barred by procedural default (or which are not manifestly unjust) are May's first and second claims, which will be addressed on the merits.

   **4.   Merits.**

Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations. 28 U.S.C. § 2254. Specifically, a federal

court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000).

A federal court may not issue the writ unless it concludes that the state court's adjudication resulted in a decision that was "contrary to," or an "unreasonable application of," clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court discussed the independent meanings of the "contrary to" and "unreasonable application" clauses contained within § 2254(d)(1).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 411-413.

The Supreme Court further clarified that a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. Id. at 409. "Under §2254(d)(1)'s unreasonable application clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

May's first and second claims are couched as challenges to his guilty plea. The state trial court made factual findings on these claims, as did the Superior Court. Specifically, each court found that May was not promised a lesser sentence than he received to induce the plea, and each court also found that May evidenced an understanding of the rights he was waiving, and that he was informed of the direct consequences of his plea. The guilty plea transcript, the transcript of the hearing on the motion to withdraw the plea, and both PCRA hearing transcripts, support these findings

of the state courts.

Whether a plea of guilty is voluntary for purposes of the federal constitution is a question of federal law. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). To determine whether a guilty plea represents a voluntary and intelligent choice, a reviewing court must examine the totality of the circumstances surrounding the plea. Brady v. United States, 397 U.S. 742, 749 (1970). To ensure that a plea is both knowing and voluntary, it cannot have been induced through misrepresentation or coercion, Brady, 397 U.S. at 750, the defendant must have notice of the nature of the charge(s) against him, Henderson v. Morgan, 426 U.S. 637, 645 (1976), the defendant must have an understanding of the law in relation to the specific facts at issue, McCarthy v. United States, 394 U.S. 459, 466 (1969), and the defendant must appreciate the consequences of the plea, i.e., he must understand the rights he is surrendering through his plea. In reviewing whether a guilty plea is "voluntary" for purposes of the U.S. Constitution, the federal courts must apply federal law. Zilich v. Reid, 36 F.3d 317, 320 (3d Cir. 1994). Id.

Once entered, a defendant does not have an absolute right to withdraw a guilty plea. United States v. Isaac, 141 F.3d 477, 485 (3d Cir. 1998). Rather, a plea of guilty entered by one fully aware of the direct consequences must stand unless induced by threats, misrepresentation, or improper promises. Mabry v. Johnson,(1978) 467 U.S. 504, 509 (1984). It is only when a defendant is not fairly apprised of the direct consequences of pleading guilty that he may challenge his guilty plea under the Due Process Clause. Id.

May's remaining claims are premised upon allegations that counsel rendered ineffective assistance leading up to the entry of the plea by promising a lesser sentence (May's first claim), or in not preparing for trial, thereby inducing an involuntary plea (May's second claim). The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993)(quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)).

> Thus the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Fretwell, 506 U.S. at 169 (citing United States v. Cronic, 466 U.S. 648, 658 (1984)). See also

- 12 -

Kimmelman v. Morrison, 477 U.S. 365, 374 (1986)(the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. Strickland, 466 U.S. at 690. A petitioner who claims that he or she was denied effective assistance of counsel carries the burden of proof. Cronic, 466 U.S. at 658.

The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689. The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. Unfairness or unreliability does not result unless counsel's ineffectiveness deprives the defendant of a substantive or procedural right to which the law entitles him. Fretwell, 506 U.S. at 372. To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694 (emphasis added). A reasonable probability is one which is sufficient to undermine confidence in the outcome. Id.

The two-part Strickland test also applies to ineffective assistance of counsel claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 57 (1985); Meyers v. Gillis, 142 F.3d 664, 666 (3d Cir. 1998). The first prong may be shown in several ways, e.g., where a plea offer is never communicated to the client; where plea information is communicated so incorrectly that it

undermines the client's ability to make an intelligent decision whether or not to accept a plea offer, or where a guilty plea is induced by misleading statements of defense counsel. To satisfy the second "prejudice" prong, a defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have proceeded to trial. Hill, 474 U.S. at 58-59. A federal habeas petitioner seeking to withdraw a guilty plea based upon the ineffective assistance of counsel must show that counsel's advice was not within the range of competence demanded by attorneys in criminal cases; only serious derelictions on the part of counsel entitle a petitioner to relief. Siers v. Ryan, 773 F.2d 37 (3d Cir. 1985).

      Here, the trial court's findings (1) that no improper promises were made, (2) that May was made aware of all relevant information, and (3) that he understood the information and voluntarily entered his guilty plea, are findings entitled to a presumption of correctness. Likewise, the finding that attorney White's testimony concerning possible defenses was credible is also entitled to that presumption. May has not presented clear and convincing evidence that these findings are incorrect. Hence, the state courts' legal conclusions that May's plea was knowing and voluntary is not an unreasonable application of federal law to the facts of this case. Mabry v. Johnson, 467 U.S. 504, 509 (1984)(plea of guilty must stand absent proof that the defendant was unaware of the direct consequences of his plea, or if it was induced by threats, misrepresentations or improper promises), citing Brady v. United States, 397 U.S. 742, 755 (1970). In short, petitioner's challenges to the guilty plea in this petition do not warrant relief since counsel's actions do not rise to the level of constitutional ineffectiveness so to invalidate the voluntary and knowing plea entered by Petitioner. Here, the state court has properly concluded that, regardless of counsel's asserted missteps, May entered a knowing and intelligent plea.

### 4. Certificate of Appealability.

      "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id.(28 U.S.C. § 2253(c)). May has not made a showing that he has been denied any of his constitutional rights. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that this Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
UNITED STATES MAGISTRATE JUDGE

Dated: November 30, 2005

cc: The Honorable Sean J. McLaughlin
United States District Judge

Walter May, II
SCI Camp Hill
P.O. Box 200
Camp Hill, PA 17001

Marie T. Veon, Esquire
District Attorney of Venango County
Venango County Courthouse
Franklin, PA 16323